**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

```
                                :
MAUREEN WISDOM,                 :
      Plaintiff,                :
                                :
      v.                        :
                                :
THE TJX COMPANIES, INC.         :    No. 2:04-CV-176
a/k/a TJ MAXX, DANN DEE         :
DISPLAY FIXTURES, INC., and     :
LEGGETT PLATT, INC.             :
      Defendants.               :
                                :
```

**OPINION AND ORDER**

This is a diversity action arising out of an incident in which the plaintiff tripped and fell over a clothing rack while shopping in a T.J. Maxx store owned by Defendant TJX Companies, Inc. ("TJX").  Currently before the Court are TJX's motion to exclude testimony of proposed expert witness Bill Julio (Doc. 58) and TJX's motion for summary judgment (Doc. 57).  A hearing was held on the motions on January 12, 2006.  For the reasons stated below, TJX's motion to exclude testimony of Julio is DENIED.  TJX's motion for summary judgment is DENIED.

**I. BACKGROUND**

The following facts are presented in the light most favorable to the non-moving party, Ms. Wisdom.  Except where otherwise noted, the facts are not in dispute.

**A. <u>The incident at T.J. Maxx</u>**

In February 2003, Maureen Wisdom was 92 years old.  She lived on her own and was able to operate her own automobile, attend to her own personal needs without assistance, and to walk without a cane.  She had never been involved in an incident in which she had tripped and fallen.  Tr. of Dep. of Maureen Wisdom at 11 (hereinafter "Wisdom Dep."), Ex. 1 to Pl's Resp. to Mot. for Summ. J. (Doc. 65)

On February 15, 2003, Wisdom traveled to the T.J. Maxx store in Burlington, Vermont to go shopping with her son and daughter-in-law.  At the time, she was wearing flat-soled shoes and eyeglasses, and she was not holding or carrying any items.  The store was having a sale, and the aisles were "crammed in," with the racks close together and heavily laden with clothing.  Tr. of Dep. of Cecil L. Smith, Jr. at 35 (hereinafter "Smith Dep."), Ex. 2 to Doc. 65.

After entering the store, Wisdom approached a rack to look at several articles of clothing.  Wisdom, who is under five feet tall, testified that the rack came up to her chin.  Wisdom Dep. at 37.  After examining the rack, she turned and attempted to walk away.  In doing so, she tripped over the leg of the rack, began stumbling, and fell into another rack.  She then fell to the floor, breaking her hip.

The rack over which Wisdom tripped was constructed with four

fourteen-inch legs on the floor and four twelve-inch arms for hanging clothes.  Although the clothes were not hanging all the way to the floor, they were sufficiently laden with clothes that Wisdom never noticed the legs.  After she fell, Wisdom heard another person, who may have been a store employee, say that a lady had previously tripped on the same racks.  Wisdom Dep. at 44-45.  Her son, who was present at the time of the accident, witnessed a T.J. Maxx employee say that people were always getting caught up in or tripping over those racks.  Smith Dep. at 34.  In addition, the assistant manager of the store, Randy Bagley, testified at a deposition that he had seen customers and employees trip over similar racks in the past, and that he himself had tripped on such a stand.  Tr. of Dep. of Randy Bagley at 15-16, Ex. 6 to Doc. 65.  In subsequent testimony, Bagley suggested, however, that some or all of the falls that he had been referring to had occurred at Ames, a different department store.  Id. at 24-25.

**B.**  **The instant action and the outstanding discovery issues**

Wisdom filed suit in Vermont state court on December 31, 2003, alleging negligence against TJX for owning, maintaining, and using hazardous clothing racks.  She subsequently amended her complaint to add Dann Dee Display Fixtures, Inc., and Leggett &

Platt, Inc. as defendants.[1]  Leggett & Platt then removed the
action to this court.  On December 15, 2005, Wisdom's claims
against Dann Dee and Leggett & Platt were dismissed with
prejudice pursuant to a settlement agreement.  The claim against
TJX remains pending.

Although substantial discovery has taken place, some
discovery remains to be completed.  In particular, Wisdom has
requested that TJX provide information about past trip-and-fall
incidents involving clothing racks of the type involved in this
case.  At the January 12, 2006 hearing, the Court directed TJX's
counsel to consult with his client and report to the Court
regarding the feasibility of obtaining the requested information
from a centralized database.  The Court indicated that at a
minimum, it would order TJX to review its records and turn over
information about clothing rack incidents at all TJX stores in
New England over the three years preceding Wisdom's fall.

**C. Wisdom's proposed expert witness**

Wisdom seeks to qualify as an expert witness William Julio,
a consultant on premises and safety issues who resides in New
Jersey.  According to his curriculum vitae, <u>see</u> Ex. C to TJX's
Mot. to Excl. Testimony of Bill Julio (Doc. 58), Julio has been
involved in the retail marketing industry for over 40 years.  He

_____

[1] Dann Dee sold the clothing rack in question to TJX.  Subsequent
to that sale, Dann Dee merged into and became a division of
Leggett & Platt.

worked initially as an employee of various supermarkets and other retailers.  He subsequently acted as a consultant to several retail and wholesale businesses, spending 20 years as the sole employee of his own consulting business, B.A. Julio Marketing Co. His consulting duties have included advising businesses on store layout and customer safety issues.  Since 1988, he has worked as a "safety expert" on premises safety and liability issues.  In that capacity, he has been qualified as an expert witness in eight states, and he has been deposed over 100 times in 12 states.  He estimates that he has offered opinions, usually on behalf of plaintiffs, in over 600 cases, including 200 cases involving tripping hazards.  Tr. of Dep. of William Julio at 71-72, Ex. B to Doc. 58.

In preparing his report for use in this case, Julio conducted a review of various documents, including depositions, TJX guidelines and policy documents, and a data sheet published by the National Safety Council.  See Report of William Julio (hereinafter "Julio Report"), Ex. A to Doc. 58.  He also conducted a personal review of approximately 100 display racks in five retail outlets in New Jersey, including two T.J. Maxx stores and three stores operated by competitors of T.J. Maxx, in which he compared the design and measurements of the various racks.

Julio opines in his report that because the rack over which Wisdom tripped was designed with 12" arms and 14" legs, the legs

created a "protruding object" in violation of industry safety
standards and T.J. Maxx's own guidelines.  Id. at 4.  He bases
this determination on his review of a T.J. Maxx Merchandise
Presentation Guide stating that racks "must not impede customer's
progress through the store," as well as a National Safety Council
data sheet warning against "[d]isplays protruding into traffic
aisles" and "unusually shaped bases with unexpected extensions
over which individuals can trip."  Id. at 2, 3.  He also notes
that in reviewing over 100 racks at three stores operated by T.J.
Maxx's competitors, he did not find any racks whose bases
exceeded the length of their arms.  Id. at 4.

     Julio concludes in his report that "[t]he failure of T.J.
Maxx to design a rack which would not protrude in to the traffic
area of the customer was the most integral cause of this
accident, which violated their own safety manuals and industry
practices."  Id.  He also asserts that lack of safety training,
lack of recorded inspections, and the spacing between racks
created unsafe conditions, further contributing to the accident.
Id.  At his deposition, Julio was questioned as to whether he had
considered the possibility that Wisdom's fall could have been
caused by her not having eaten recently.  He responded that he
had not given "a lot of credence" to that possibility, but he
stated that he did consider a number of factors in reaching his
conclusion.  Julio Dep. at 55-56.

<u>DISCUSSION</u>

**III. <u>TJX'S MOTION TO EXCLUDE TESTIMONY OF WITNESS JULIO</u>**

TJX argues that Julio's testimony must be excluded under

Fed. R. Evid. 702 and <u>Daubert v. Merrell Dow Pharmaceuticals,</u>

<u>Inc.</u>, 509 U.S. 579 (1993).

**A. <u>The applicable law</u>**

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence
> or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product
> of reliable principles and methods, and (3) the witness
> has applied the principles and methods reliably to the
> facts of the case.

Rule 702 incorporates the modern standard, as defined by

<u>Daubert</u>, for determining the admissibility of scientific and

technical evidence at trial.  Rejecting the prior rule that novel

scientific evidence was admissible only if it was based on a

method or theory that had gained general acceptance within the

field, the <u>Daubert</u> Court emphasized the liberal thrust of the

Federal Rules of Evidence and the trend toward relaxing opinion

testimony requirements.  <u>Daubert</u>, 509 U.S. at 588; <u>see also</u>

<u>Blanchard v. Eli Lilly & Co.</u>, 207 F. Supp. 2d 308, 316 (D. Vt.

2002).  The Court noted the liberal relevance standard set forth

in Fed. R. Evid. 401 and 402 and emphasized that the inquiry into

scientific validity is a flexible one.  <u>Blanchard</u>, 207 F. Supp.

7

2d at 315 (citing <u>Daubert</u>, 509 U.S. at 594).

One corollary of Rule 702's requirement that expert testimony assist the trier of fact is that an expert's opinion will not be admitted if it relates to "lay matters which a jury is capable of understanding and deciding without the expert's help." <u>Andrews v. Metro North Commuter R.R.</u>, 882 F.2d 705, 708 (2d Cir. 1989). In addition, the requirement of assistance to the trier of fact serves to ensure the testimony's relevance, or "fit." <u>Adel v. Greensprings of Vt., Inc.</u>, 363 F. Supp. 2d 683, 686 (D. Vt. 2005) (citing <u>Daubert</u>, 509 U.S. at 591).

Rule 702 also requires that expert testimony be the product of "reliable principles and methods." Fed. R. Evid. 702. This Court analyzes the issue of reliability according to the analysis in <u>Blanchard v. Eli Lilly</u>. As that decision emphasized, the "trial judge enjoys 'broad latitude when it decides how to determine reliability.'" <u>Blanchard</u>, 207 F. Supp. 2d at 316 (citing <u>Daubert</u>, 509 U.S. at 142).

The <u>Daubert</u> Court set forth four factors for a court to weigh in making a reliability determination: (1) whether the theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) as to a scientific technique, the known or potential rate of error, and the existence of standards governing its application; and (4) widespread acceptance. <u>Daubert</u>, 509 U.S. at 593-94. However, this list was not intended as an exhaustive summary of all

8

relevant factors.  See Daubert, 509 U.S. at 593 (stating that
"[m]any factors will bear on the inquiry, and we do not presume
to set out a definitive checklist or test"); Blanchard, 207 F.
Supp. 2d at 315-16.  Moreover, the list of factors found in
Daubert was developed for novel scientific evidence.  Adel, 363
F. Supp. 2d at 686.  Thus, other factors may be more relevant
when courts consider more mainstream methods, id., or in cases
involving technical as opposed to scientific evidence.

    Courts applying Daubert have found other factors pertinent
and have recognized that the Daubert factors do not apply to all
types of expert testimony.  Id.  Other factors courts have used
in determining the reliability of expert testimony are: (1)
whether the expert "employs in the courtroom the same level of
intellectual rigor that characterizes the practice of an expert
in the relevant field," Kumho Tire Co., Ltd. v. Carmichael, 526
U.S. 137, 152 (1999); (2) whether the expert's field itself lacks
reliability, id. at 151; (3) whether the testimony comes from
research conducted independent of litigation, Daubert v. Merrell
Dow Pharm., Inc., 43 F.3d 1311, 1317 (9th Cir. 1995); (4) whether
the expert has considered possible alternative explanations in
his analysis, Ambrosini v. Labarraque, 101 F.3d 129, 140 (D.C.
Cir. 1996); and (5) the non-judicial uses to which the technique
is put, United States v. Downing, 753 F.2d 1224, 1239 (3d Cir.
1985).  None of these factors is automatically dispositive, and
the application of each factor "depends upon the particular

circumstances of the particular case at issue[.]" <u>Kumho Tire</u>,
526 U.S. at 150.  The court's inquiry must focus on the
methodology used by the expert, and not the conclusions reached.
<u>Adel</u>, 363 F. Supp. 2d at 687 (citing <u>Daubert</u>, 509 U.S. at 595).
Nevertheless, the court is not obligated to accept a conclusion
if it does not reliably flow from the facts available and
methodologies used.  <u>Id.</u> (citing <u>Amorgianos v. National R.R.</u>
<u>Passenger Corp.</u>, 303 F.3d 256, 266 (2d Cir. 2002).

**B.** **Admissibility of Julio's testimony**

In his report, Julio concludes that Wisdom's accident was
caused by "[t]he failure of T.J. Maxx to design a rack which
would not protrude into the traffic area of the customer" and by
TJX's failure to follow its "own safety manuals and industry
practices."  Julio Report at 4.  TJX seeks to exclude Julio's
testimony in its entirety, arguing that a jury is capable of
understanding the matter without it, that Julio is not qualified
to render the proposed opinions, and that his opinions do not
represent an application of reliable principles and methods to
the facts of the case.

TJX's first argument is that Julio's testimony regarding the
defectiveness of the rack would not assist the jury because it
involves matters that the jury is capable of understanding on its
own.  Julio's opinion, TJX argues, amounts to no more than the
common-sense observation that "if it sticks out, someone may trip
on it[.]"  TJX's Mot. to Excl. at 4.

10

While the Court agrees that the issues surrounding the design of the rack and the conclusions in Julio's report are not particularly complex, Julio's opinion carries greater weight than that of a layperson because of his extensive background in retail safety.  Julio has decades of experience in working with merchandise displays and store layouts and ensuring customer safety.  At his deposition, he demonstrated familiarity with the different hazards posed by various types of displays and described strategies and methods for reducing those hazards. Even though any layperson can understand that protruding objects present a tripping hazard, Julio could assist the jury by drawing on his experience to assess the often subtle safety implications of different rack designs.  For this reason, the Court cannot agree with TJX that the jury would be equally capable of deciding the matter without the benefit of Julio's testimony.

TJX next argues that Julio is not qualified to render an opinion as to the construction of the rack because he has no experience in clothing rack design, he has no familiarity with the specific type of rack at issue, and he is not aware of any studies assessing the appropriateness of different rack designs. Once again, however, the Court notes that Julio's opinion is based on significant experience in the retailing world.  While such practical, on-the-job experience might be insufficient to qualify an expert in a scientific or highly technical field, the relatively simple design of the rack in this case does not

11

present such a situation.  Thus, while Julio may not have
participated in the actual engineering or construction of
clothing racks, his exposure to numerous types of merchandise
displays and store layouts over his decades in relevant fields
has given him a basis with which to judge the safety of different
designs as they are used in stores.  The fact that he has been
qualified as an expert in numerous cases in several states
reinforces the conclusion that he is suitably qualified.

     TJX's third argument is that Julio has failed to apply
reliable principles and methods to the facts of the case, as
required by Daubert.  It contends that his conclusions regarding
the causes of Wisdom's fall are based on unsupported speculation,
not on any study, standard, guideline, or other reliable basis.
Because it relates to the reliability of Julio's opinions, this
argument calls for an application of the factors found in Daubert
and its progeny.

     Since the four factors listed in Daubert itself were
developed for novel scientific evidence, Adel, 363 F. Supp. 2d at
686, they are of limited utility in evaluating Julio's evidence.
To be sure, Julio's opinions do not appear to be based on
theories that have been tested, that have a known rate of error,
or that have been published in a peer-reviewed journal.  These
deficiencies carry relatively little weight in this case,
however, because the opinions are technical rather than
scientific, and because they do not involve novel theories.  See

12

Adel, 363 F. Supp. 2d at 686.  In addition, Julio's report does take into account reliable publications, such as the National Safety Council document, even if it does not rely on peer-reviewed scientific journals.

Of greater significance to the Court are the factors developed in cases subsequent to Daubert.  There is no indication that Julio's field itself lacks reliability.  Retail safety is an important field, and he has operated a bona fide consulting business in that field for many years.  This fact is also relevant to another of the factors, the non-judicial uses to which the work has been put.  Because Julio's work has been used not only in court but also by the retailers for which he has consulted, this factor weighs in favor of admissibility.

TJX argues that Julio failed to give adequate consideration to alternative explanations in his analysis.  Julio testified, for example, that he "did not put a lot of credence" into the theory that Wisdom may have fallen due to weakness from not having eaten recently.  However, Julio testified that when making a judgment about the cause of an accident, he does take numerous factors into account, and he was candid about the fact that his primary expertise is in premises safety, not other fields such as medicine.  Given that no expert can be expected to have expertise in all of the fields that might be implicated in an incident such as this, the Court concludes that this factor bears more on the weight than on the admissibility of Julio's testimony.

13

The Court's primary concern relates to whether Julio has employed the same level of intellectual rigor that characterizes the practice of an expert in his field.   In analyzing this factor, a distinction must be drawn between Julio's two causation theories: the purported design defect and TJX's alleged failure to follow proper safety procedures.

As to the latter theory, the Court is satisfied that Julio employed a sufficient degree of intellectual rigor in concluding that TJX's safety procedures contributed to the accident.   In order to make that judgment, Julio drew on his extensive familiarity with proper store layout and safety procedures, as well as his review of national standards and T.J. Maxx's own guidelines.   Julio did acknowledge that some of the safety deficiencies he identified, such as T.J. Maxx's failure to keep a proper sweep log, probably did not contribute to the accident. More compelling, however, are his findings about rack placement and failure to control obstructions in traveled areas. Particularly since Julio has been qualified in numerous other jurisdictions to testify as an expert on similar safety questions, the Court has little doubt that his approach in making these findings was sufficiently reliable.

In contrast, at this stage of the case, the Court has concerns about whether Julio used a sufficiently rigorous approach to determine that the rack was defective.   Because he has little demonstrated experience in the particular field of

14

clothing rack design, Julio does not have an extensive background on which to draw in reaching such a conclusion.  In the absence of this type of personal experience, even someone with Julio's safety expertise would need to draw on reliable evidence such as studies, statistics, or experiments.  Although Julio did find that T.J. Maxx's rack design differed from the "over 100 similar racks" that he examined at other retail stores, his survey of three stores in New Jersey does not qualify as a rigorous study of national design standards sufficient to demonstrate that the rack was defective.

Taking all of the above factors into account, with particular emphasis on the rigor of Julio's approach, the Court reaches a mixed conclusion.  Julio's opinions regarding TJX's safety practices and their contribution to Wisdom's accident are sufficiently reliable to be admitted.  At this point, though, there are doubts as to the reliability of his opinions regarding the defectiveness of the display rack.  These doubts may yet prove to be unfounded; since Wisdom is still entitled to significant discovery about incidents involving similar racks at TJX stores, there is a possibility that Julio will receive enough data to reach a more reliable conclusion.  For this reason, the Court will deny TJX's motion to exclude Julio's testimony, but the denial is without prejudice to TJX's right to renew its motion with respect to Julio's conclusions about the defectiveness of the rack.

15

## IV. TJX'S MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A court may not grant summary judgment if a disputed fact exists that might affect the outcome of the suit under controlling substantive law.  Id. at 248.  The burden is on the moving party to demonstrate the absence of a genuine issue of material fact, and in considering the motion, the court must resolve all ambiguities and draw all inferences in favor of the nonmoving party.  Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

### B. Whether TJX is entitled to summary judgment on the ground that the danger posed by the rack was open and obvious

TJX acknowledges that as a business owner, it has a "duty to keep [its] premises in a safe and suitable condition, so that [its business invitees] would not be unnecessarily or unreasonably exposed to danger."  Forcier v. Grand Union Stores,

16

<u>Inc.</u>, 128 Vt. 389, 393, 264 A.2d 796, 799 (1970). TJX argues, however, that this duty does not extend to open and obvious dangers, and it contends that the danger posed by the rack in this case was open and obvious.

It is true that Vermont law has traditionally afforded a measure of protection to business owners whose invitees injure themselves by disregarding obvious dangers. "The business invitee ha[s] a right to assume that the premises, *aside from obvious dangers*, [are] reasonably safe for the purpose for which he [is] upon them, and that proper precaution [has] been taken to make them so." <u>Dalury v. S-K-I Ltd.</u>, 164 Vt. 329, 334-35, 670 A.2d 795, 799 (1995) (emphasis added); <u>Garafano v. Neshobe Beach Club</u>, 126 Vt. 566, 572, 238 A.2d 70, 75 (1967). It is by no means clear, however, that TJX is correct in characterizing this protection as a limitation on the owner's duty of care. The rule in Vermont has long been that "[w]here a defect or danger is patent or obvious it is contributory negligence to fail to exercise ordinary care to avoid it." <u>Lattrell v. Swain</u>, 127 Vt. 33, 40, 239 A.2d 195, 200 (1968); <u>Wall v. A.N. Deringer, Inc.</u>, 119 Vt. 36, 38, 117 A.2d 390, 391 (1955). In other words, it appears that in Vermont, the obviousness of a danger is an issue bearing on the *plaintiff's* negligence, not the defendant's lack of duty. That was the conclusion drawn by Judge Oakes in <u>Hoar v. Sherburne Corp.</u>, 327 F. Supp. 570, 578 (D. Vt. 1971):

17

> To a business visitor are owed certain duties--duties to keep premises reasonably safe.  When those duties are not met there is negligence.  The risk of unsafe premises is not assumed by business visitors, although licensees (and trespassers) assume the risk of obvious dangers.  Business visitors may, however, be guilty of contributory negligence, by acting unreasonably under the circumstances.  This is a jury question, in this case, as in any other[.]

Prior to 1970, when any degree of contributory negligence was still an absolute bar to recovery in Vermont, the issue of whether the plaintiff had disregarded an obvious danger was more susceptible to resolution by the court than it is today.  See, e.g., Wall, 119 Vt. at 38, 117 A.2d at 391 (holding plaintiff contributorily negligent as a matter of law for failing to notice, and consequently falling over, a six-inch step in defendant's place of business).  Even in those days, however, the question of contributory negligence was "ordinarily . . . a question of fact for the jury," and was for the court to decide only when the undisputed facts were "so conclusive that but one reasonable deduction can be drawn therefrom[.]"  Id. at 37, 117 A.2d at 391; accord Morgan v. Renehan-Akers Co., Inc., 126 Vt. 494, 236 A.2d 645 (1967).

Now that Vermont has adopted the doctrine of comparative negligence, a plaintiff's negligence--including her failure to notice an obvious danger--bars recovery only if it exceeds the combined negligence of the defendants.  12 Vt. Stat. Ann. § 1036 (2002).  As the Vermont Supreme Court has observed, the comparative negligence statute "undoubtedly enlarged the

18

fact-finding and fact-evaluation functions of the jury." <u>Shea v.</u> <u>Peter Glenn Shops, Inc.</u>, 132 Vt. 317, 319, 318 A.2d 177, 178 (1974).  In order to determine whether and to what degree recovery is barred, a factual determination is now needed not only as to whether the plaintiff was herself negligent, but also as to how her negligence compared to the defendant's.  Hence, in <u>Shea</u>, another case in which the plaintiff had fallen over steps in the middle of the defendant's store, the court held that it was the jury's role to assess "plaintiff's own conduct and regard for her own safety, so that a comparison may be drawn between the negligent shortcomings of the defendant, if any, and of the plaintiff, if any."  <u>Id.</u> at 319, 318 A.2d at 178.

As the above discussion makes clear, TJX will not be entitled to summary judgment under Vermont law unless the undisputed facts present such overwhelming evidence of Wisdom's negligence that no reasonable jury could find that defendants' fault exceeded hers.  The evidence does not permit the Court to make such a finding.  To the contrary, there is sufficient evidence from which a jury could determine that Wisdom was shopping in a reasonably careful manner.  Wisdom testified that she was able to get around by herself without a cane; that despite her advanced age, she had never fallen and hurt herself; and that on the day of her fall, she was wearing flat-soled shoes and was not carrying anything.

With regard to the obviousness of the danger posed by the

rack, this Court cannot disagree with the observation that
"[a]side from clothes and hopeful salespersons, there are few
things other than clothing racks more likely to be discovered in
a clothing store." Cudney v. Sears, Roebuck & Co., 84 F. Supp.
2d 856, 859 (E.D. Mich. 2002).  Nevertheless, even if the
presence of the rack should not have come as a surprise to
Wisdom, there is evidence to suggest that TJX's store layout and
stocking decisions contributed significantly to the accident.
Wisdom's son testified that the racks at T.J. Maxx were "crammed
in" close together and heavily laden with clothing, which would
have made it more difficult to see and maneuver around them,
particularly for someone like Wisdom, who testified that the rack
came up to her chin.  There is also evidence that other
individuals, including customers and T.J. Maxx employees, had
tripped over identical racks in the past, and that T.J. Maxx
employees were aware of this.

In addition, it is undisputed that the bases of the racks
extended slightly further than the arms.  TJX argues that Julio's
report fails to establish that this design represents a defect,
and as discussed above, the Court agrees that Julio's limited
investigation of a few competing stores cannot by itself
establish that the design was defective.  Nevertheless, common
sense dictates that such a base design could create an enhanced
risk of tripping, especially if a customer is enticed to examine
the tightly-packed merchandise closely to review price tags and

clothing labels.  Even in light of the Court's doubts as to
Julio's finding of defectiveness, the other portions of his
testimony are relevant to this issue.  Accordingly, regardless of
whether the rack suffered from a defect in design or manufacture,
there is evidence from which a jury could infer that it was used
in a non-obvious and negligent manner.

TJX relies on Wisdom's deposition testimony to assert that
the rack was in plain view and that Wisdom admitted to not paying
attention.  With regard to the first assertion, while Wisdom did
testify that there was nothing obstructing her vision of the rack
itself, Wisdom Dep. at 39, she never testified directly that the
*legs* were in plain view, and the legs were what presented the
alleged danger.  TJX's second assertion also mischaracterizes
Wisdom's testimony.  Shortly after being asked what color the
rack's legs were, she testified that as a general matter, "[w]hen
I am looking at clothes, I am not paying any attention to what
kind of rack they are hanging on."  Id. at 39-40.  She did not,
however, suggest that she was failing to look out for her own
safety at the time of the accident.

In arguing that there is no role for a jury to play in this
case, TJX relies heavily on cases from jurisdictions in which a
business owner has no duty to protect against obvious dangers.
See, e.g., Cudney, 84 F. Supp. 2d at 858 (applying "the general
rule in Michigan . . . that a premises owner has "no duty to warn
of open and obvious dangers"); McGuire v. Sears, Roebuck & Co.,

21

693 N.E.2d 807, 809 (Ohio App. 1996) (noting that under Ohio law, "[a] store owner . . . owes no duty to warn business invitees of open and obvious dangers on the premises").  While it is true that many jurisdictions follow some variation on that rule, this Court's review of recent Vermont case law reveals nothing to cast doubt on Judge Oakes' conclusion in <u>Hoar</u> that Vermont courts have thus far declined to adopt the no-duty approach.

In addition, even if Vermont courts were to treat obviousness as a limitation on a business owner's duty, they would be unlikely to reach a different result from the one reached today.  For example, the Vermont Supreme Court has interpreted Vermont's sports liability statute, Vt. Stat. Ann. tit. 12, § 1037, to provide that a ski area operator has no duty to protect against "obvious and necessary" dangers.  <u>Frant v. Haystack Group, Inc.</u>, 162 Vt. 11, 19, 641 A.2d 765, 769 (1994). The plaintiff in <u>Frant</u> had skied, by his own admission "pretty fast," into an ordinary wooden post that was holding up a rope in a ski lift corral.  In denying the ski area's motion for summary judgment, the court held that it was up to the jury, not the trial court, to decide whether the post had been obvious and necessary.  <u>Id.</u> at 21; 641 A.2d at 771.  The result in <u>Frant</u> strongly suggests that if Vermont courts were to apply the no-duty rule not only to cases governed by Section 1037 but to the entire field of premises liability, there would still be a role for a jury in determining the obviousness of the clothing rack in

22

this case.

Furthermore, a majority of the jurisdictions that treat obviousness as a duty question have adopted the rule stated in Section 343A of the Restatement (Second) of Torts: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." See, e.g., Ward v. K-Mart Corp., 554 N.E.2d 223, 231-32 (Ill. 1990) (following Section 343A and citing numerous other decisions that have done so). Even assuming *arguendo* that the danger posed by the rack was obvious as a matter of law, Wisdom has established the existence of disputed facts sufficient to require a jury finding as to whether TJX should have anticipated the harm despite its obviousness. Other courts have so concluded in similar cases. For example, in Michalski v. Home Depot, Inc., 225 F.3d 113, 121-22 (2d Cir. 2000), the court, applying Section 343A, denied summary judgment in a case where the plaintiff had fallen over a pallet in the middle of the defendant's store. The court held that "[e]ven if the pallet were deemed an obvious hazard, a reasonable jury could still determine that Home Depot breached its duty to protect or warn Michalski of foreseeable harm to which she might be exposed as a visitor not expecting to encounter pallets on the floor or distracted by the merchandise for sale in the store." Id. at 122.

In short, while it is by no means clear that Wisdom was entirely free from fault, the undisputed facts do not establish that any negligence on her part exceeded that of Defendants, and TJX is not entitled to summary judgment on this ground.

## C. Whether Wisdom has presented sufficient evidence of proximate cause

To prevail on her claim of negligence, Wisdom must show that TJX's breach proximately caused her injury.  Keegan v. Lemieux Sec. Servs., Inc., 177 Vt. 575, 576, 861 A.2d 1135, 1137 (2004). TJX argues that Wisdom has presented insufficient evidence of proximate cause because she has not shown that the alleged defect in the clothing rack, namely the fact that the legs protrude two inches further than the arms, was a but-for cause of her injuries.

TJX's argument relies on an unduly narrow characterization of Wisdom's allegations of breach.  It is true that the Amended Complaint alleges that the rack was defectively designed.  Am. Compl. ¶ 7 (Doc. 11).  Wisdom also contends, however, that TJX was negligent in "owning, maintaining, and using" the rack.  Id. ¶ 12.  Indeed, TJX itself acknowledges elsewhere that Wisdom intends to present testimony, through Mr. Julio, that "TJX is responsible for the Plaintiff's injuries under two theories-- design defect and insufficient safety practices."  TJX's Mot. to Exclude Testimony of Bill Julio.

Assuming that a jury were to find that TJX's ownership,

maintenance, and use of the rack constituted a breach of its duty
to Wisdom, there would be ample evidence to permit the jury to
find that the breach was a proximate cause of Wisdom's injuries.
As discussed above, Wisdom testified that she had never fallen
and injured herself before she encountered the rack at T.J. Maxx.
There is evidence that the rack was heavily laden and placed in
close proximity to other racks.  There is also evidence that
others had tripped and fallen over identical racks.  Finally,
there is the matter of the rack's protruding legs.  The Court is
inclined to agree with TJX that there is insufficient evidence
that the legs' extra two inches were the *sole* cause of Wisdom's
fall.  In conjunction with the issues regarding loading and
placement of the rack, however, those extra inches could have
played a role.  The Court concludes that if a jury were to take
all of the evidence into consideration, it could find that but
for the particular manner in which TJX used the rack in question,
Wisdom would not have fallen and become injured on that day.
Accordingly, there is sufficient evidence to establish proximate
cause, and TJX is not entitled to summary judgment.

**D. Whether Wisdom is foreclosed from recovering under strict
liability**

TJX argues that Wisdom cannot recover from TJX under a
theory of strict liability because the clothing rack was not
"dangerous to an extent beyond that which would be contemplated
by the ordinary consumer[.]"  Farnham v. Bombardier, 161 Vt. 619,

25

620, 640 A.2d 47, 48 (1994).  While the Amended Complaint alleges that Defendants Dann Dee and Leggett & Platt are strictly liable for Wisdom's injuries, see Am. Compl. ¶ 20, the Court does not read the Amended Complaint as containing any strict liability claim against TJX.  Accordingly, it is unnecessary to address TJX's argument regarding strict liability.

**CONCLUSION**

For the foregoing reasons, Defendant TJX's motion to exclude the testimony of William Julio is DENIED, but the denial is without prejudice to TJX's right to bring a renewed motion as to Julio's conclusions about the defectiveness of the rack.  TJX's motion for summary judgment is DENIED.

Dated at Burlington, Vermont this 18th day of January, 2006.


/s/ William K. Sessions III
William K. Sessions III
Chief Judge